DECISION
Defendant-appellant, Raashawn J. Reynolds, was indicted on eight counts, including charges of aggravated burglary, aggravated robbery and robbery, all with two firearm specifications and possessing criminal tools. The charges arose out of an incident which occurred on June 3, 2001.
The first witness to testify at trial was Ruth Elizabeth LeMaster, ("Elizabeth") who testified she lives in Huntington, West Virginia and came to Columbus on June 2, 2001, with Sofia Butcher and Tina Prout, to visit her boyfriend. The women had gone to dinner at Ryan's and returned to their room at Motel 6. At approximately 2:30 a.m. on June 3, 2001, the three women went to the Meijer store on Cleveland Avenue. While they were in the store, two men attempted to engage her and Sofia in conversation while Tina went to the rest room. The men followed them through the store and into the parking lot. While driving back to the motel, one of the men approached their car when it was stopped at a red light and asked if he could go with them. She told him no and proceeded to return to the motel. When they arrived at their room, the men were still following them and one used his foot to push his way into the room. Both men came into the room and sat down. The phone rang and it was Elizabeth's boyfriend who arrived within a few minutes. Upon his arrival, the men left. One of the men put his hand on Tina's shoulder and said: "I'll be back for you."
The next witness to testify was Sofia Butcher. She essentially testified to the same facts as Elizabeth regarding the incident in the early hours of June 3, 2001. During the evening of June 3, 2001, at approximately 10:00 p.m., she went to the motel laundry room to do some laundry. Elizabeth was on a dinner date and Tina was in the shower. When she returned to the room, Tina had just finished her shower. There was a knock on the door and, when Sofia opened the door, a man put a gun to her head, grabbed her by the throat, threw her onto one of the beds and said: "Bitch, give me all your money or we'll kill you." A female and another male entered the room. While Sofia was struggling with him, the female was fighting with Tina while the other male went through their luggage. Finally, Sofia gave him her last three dollars and the three of them left. Sofia called the front desk and the special duty police officer came to the room immediately. He called other police officers who took a report. Elizabeth returned to the room and the three of them were taken to an apprehension scene. They identified three people at the scene and appellant was identified as one of the men who followed them at the Meijer store and one of the men who robbed them. Appellant was identified by his braided hair, eyes and his voice.
Tina Prout also testified. Her testimony was similar to both Elizabeth's and Sofia's testimony. She testified that two men followed them in the Meijer store, one came to the car window while they were stopped at a red light and the men pushed their way into the motel room. One of those men robbed Sofia and her at gunpoint. The woman hit Tina in the head with the motel telephone two times. The third person in the room was male and he went through the women's things, took the money and Tina's purse. Later, Tina, Sofia and Elizabeth were taken to another scene and they identified appellant as one of the men who followed them in the Meijer store and as one of the robbers. The women were positive in their identifications.
A police officer, Derek Hancock, testified that a caller reported seeing four males exit a car and put guns in their pockets near the intersection of Karl Road and Pauline Avenue. Upon arriving at that location, he found appellant, a female co-defendant, Tinnissha Wilkerson who is appellant's half-sister, and another male hiding in some bushes located approximately five to ten minutes from the motel. He also found two pairs of gloves, a toboggan hat, a bandana and a nine-millimeter gun. The gun was loaded and found in the vicinity of appellant. Both Sofia and Tina identified the items as ones that the robbers had or were wearing.
The defense presented two witnesses. One was appellant's wife and the other was a close friend of appellant, Ikeanthony Terry, who regards appellant as a big brother. Appellant's wife testified that, on Saturday, June 2, 2001, she and her husband were at home all night and went to bed around midnight. At approximately 11:30 a.m. on Sunday, June 3, 2001, they went to church and, at approximately 6:00 in the evening, they went to the laundromat and returned home by 8:30 p.m. Although she testified that "we" returned home after going to the laundromat, she also testified that, at approximately 10:30 p.m., Ikeanthony Terry, who was staying with them, arrived home and about ten minutes later, appellant returned home. At 11:45 p.m., appellant and Terry left the house and did not return that night. She testified that appellant was dressed in black when he left and she had braided both his hair and Terry's hair.
Terry testified that he had spent Saturday night in a hotel with his girlfriend and his children, and did not return to appellant's house until approximately 11:30 p.m. Sunday evening. When appellant arrived home, Terry left with appellant, Tinnissha Wilkerson and Byron Smith. Later he was arrested after being positively identified as a suspect in a robbery. Even though Terry testified he had no knowledge of the robbery, he pled guilty to carrying a concealed weapon because he was closest to the gun when they were arrested and he wanted to avoid a longer jail sentence.
After a jury trial, appellant was found guilty on all counts. After sentencing, appellant filed a notice of appeal and raises the following assignments of error:
 I. Raashawn Reynolds' conviction was based upon insufficient evidence.
 II. Raashawn Reynolds' conviction was against the manifest weight of the evidence.
 III. Raashawn Reynolds was improperly convicted due to ineffective assistance of his trial counsel.
 IV. The trial court improperly excluded a key defense witness.
The first two assignments of error are related and shall be addressed together. By the first assignment of error, appellant contends that his conviction was based upon insufficient evidence, and by the second assignment of error, appellant contends that his conviction was against the manifest weight of the evidence.
The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
The test for determining whether a conviction is against the manifest weight of the evidence differs somewhat from the test as to whether there is sufficient evidence to support the conviction. With respect to manifest weight, the evidence is not construed most strongly in favor of the prosecution, but the court engages in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. See State v. Conley (1993), Franklin App. No. 93AP-387.
 * * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's [Law Dictionary (6th Ed. 1990)] at 1594). [Thompkins, at 387.]
The evidence in this case includes three eye witnesses who identified appellant as one of the robbers by his hair, eyes and voice. He was found with his half-sister, who the victims also identified as one of the robbers, hiding in the bushes close to the robbery scene. The victims also identified the gun and articles of clothing worn by the robbers.
Appellant offered testimony by both his wife and a close friend as alibi evidence. His wife testified that appellant was home with her the night before the robbery but did not testify he was at home at the time of the robbery. His friend testified that appellant was not home at the time of the robbery and they were arrested together shortly after they left appellant's house.
The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230. The evidence presented by the state is sufficient for a rational trier of fact to have found the essential elements of the crime proven beyond a reasonable doubt and there is sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. Appellant's first and second assignments of error are not well-taken.
The third and fourth assignments of error are also related and shall be addressed together. By the third assignment of error, appellant contends that he was improperly convicted due to ineffective assistance of his trial counsel. By the fourth assignment of error, appellant contends that the trial court improperly excluded a key defense witness.
Late in the morning of the third day of trial, on September 7, 2001, when it was time for the defense to call its last witness, the witness was not present. The trial court told counsel that she was moving forward because counsel was told to have the witness present at 9:00 a.m. The record provides as follows:
THE COURT: You may be seated.
 Let's make a record on this. This witness is Stephanie Austin, and the subpoena, the copy they have says that she was subpoenaed to be here the 5th, 6th, 7th of September, at 9:00 a.m. Did she show up on the 5th?
 MS. CORNER: She did not, Your Honor, and she did not because I did tell her that the State's case would be presented on the 5th, and she just started a new job and I told her I would page her and to be on call, so therefore she gave me her pager number, and I did call her today at the 9:30 hour and let her know, and I talked to her.
THE COURT: You didn't call her until today?
MS. CORNER: No. She was called last night also.
THE COURT: To tell her to be here at 9:00 today?
MS. CORNER: I told her she could be on call.
 THE COURT: I told you yesterday to have your witnesses here at 9:00, so if you told her to be on call and you didn't page her until 9:30 today, I'm not going to enforce the subpoena. That's your fault. You should have had her here at 9 o'clock.
 MR. CREEDON: Your Honor, if I may address the issue. Notice of intent to call witnesses was filed by the defendants July 23rd, 2001, and Stephanie Austin's name is not on it.
THE COURT: Okay.
MS. CORNER: Thank you, Your Honor.
 THE COURT: Okay, for the reasons that I informed the defense counsel to have all of their witnesses here at 9 o'clock today, I told you this yesterday, and she is not here, and you did not call her till 9:30 to be here today; plus the fact that she is not on the witness list, that she had not been disclosed to the State, that is another reason why the State will not allow the subpoena to be enforced in terms of going out and picking her up. Besides, the address on the subpoena is her home and you indicated she started a new job.
Do you have any other additional witnesses?
Appellant contends that his trial counsel committed several errors, including failing to disclose in discovery a vital defense witness, failing to have the witness available at the appointed time and failing to proffer for the record the substance of the testimony of the witness when the witness was excluded by the trial court. Appellant contends that these errors resulted in denial of his constitutional right to call his own witnesses in his defense and present his entire case to the jury.
In order to demonstrate that his counsel's representation was ineffective, appellant must demonstrate that: (1) counsel's performance was deficient; and (2) this deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 687. "A defendant does not state a claim for ineffective assistance of counsel unless his attorney acted unreasonably given the facts of the case, and the unreasonable conduct was prejudicial to the defense." State v. Mills (1992), 62 Ohio St.3d 357, 370, certiorari denied, Mills v. Ohio (1992),505 U.S. 1227. Counsel need not raise meritless issues. State v. Hill (1996), 75 Ohio St.3d 195.
In paragraph two of the syllabus of Lakewood v. Papadelis (1987),32 Ohio St.3d 1, the Supreme Court of Ohio determined that "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." However, the court also explained that exclusion of evidence is only impermissible when it acts to completely deny a defendant of his constitutional right to present a defense. In State v. Smith (1977), 50 Ohio St.2d 51, the court determined that a trial court has the discretion to admit unfiled alibi testimony if the testimony does not surprise or prejudice the prosecution's case and if the defense operated in good faith when it failed to give proper notice of the alibi.
The United States Supreme Court has recently addressed the issue of a court's refusal to enforce a subpoena in Lee v. Kemna (2002),122 S.Ct. 877. In Lee, the court determined that failure to enforce a subpoena may be error; however, in that case, the record was clear in demonstrating the testimony that would have been given by the missing witnesses and that the witnesses could be located within a reasonable time.
In this case, there was no proffer from counsel and nothing else in the record which indicates what Stephanie Austin's testimony would have been. Thus, appellant has not demonstrated prejudice. Although appellant contends that his counsel was ineffective for failing to proffer the evidence, without such evidence, we cannot determine whether appellant was prejudiced. This issue is one that should be addressed in postconviction relief, not on direct appeal. Appellant's third and fourth assignments of error are not well-taken.
For the foregoing reasons, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS and BROWN, JJ., concur.